```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF ALABAMA
                    SOUTHERN DIVISION


CLARENCE R. BARRON, JR.,         :

     Plaintiff,                  :

vs.                              :
                                     CIVIL ACTION 05-0732-WS-M
JO ANNE B. BARNHART,             :
Commissioner of
Social Security,                 :

     Defendant.                  :
```

REPORT AND RECOMMENDATION

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*). The action was referred for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Oral argument was waived in this action (Doc. 16). Upon consideration of the administrative record and the memoranda of the parties, it is recommended that the decision of the Commissioner be affirmed, that this action be dismissed, and that judgment be entered in favor of Plaintiff Clarence R. Barron, Jr. and against Defendant Jo Anne B. Barnhart.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richard-*

*son v. Perales*, 402 U.S. 389, 401 (1971).  The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

Plaintiff was born November 12, 1968.  At the time of the administrative hearing, Barron was thirty-two years old, had completed an eighth-grade special education (Tr. 189), and had previous work experience as an oyster shucker (Tr. 191).  In claiming benefits, Plaintiff alleges disability due to depressive disorder, personality disorder with borderline traits, Hodgkin's Disease, and back problems (Doc. 12 Fact Sheet).

The Plaintiff protectively filed applications for disability insurance benefits and SSI on February 12, 2003 (*see* Tr. 3, 13; Tr. 44-46).  Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that Barron was capable of performing his past relevant work as an oyster shucker (Tr. 10-25).  Plaintiff requested review of the hearing decision (Tr. 9) by the Appeals Council, but it was denied (Tr. 4-6).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Barron alleges that:  (1) The ALJ did not properly consider the opinions and diagnoses of his treating physician; (2) the ALJ improperly discredited his testimony; (3) the ALJ did not consider the side-

effects of his medication; and (4) the ALJ engaged in "sit and squirm" jurisprudence (Doc. 12).  Defendant has responded to—and denies—these claims (Doc. 13).

Plaintiff's first claim is that the ALJ did not accord proper legal weight to the opinions, diagnoses and medical evidence of Plaintiff's physician.  More specifically, Barron refers to the notes of Dr. Rajani S. Joshi (Doc. 12, pp. 8-13).  It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[1] *see also* 20 C.F.R. § 404.1527 (2005).

On September 17, 2002, Dr. Joshi, a doctor with Mobile Mental Health, signed off on an interdisciplinary plan which diagnosed Barron to have depression as well as alcohol and cannabis dependence, both in partial remission; the document stated that Plaintiff was motivated for treatment but a possible barrier to that treatment was his lack of transportation (Tr. 154).  Medical notes from October 24 indicate that the doctor had performed a psychiatric evaluation on September 5, 2002 though that report does not appear in the record; Joshi noted that

---

[1] The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

3

Plaintiff had been admitted to Mobile Infirmary three weeks earlier, for a week, for a suicide attempt during a bout of major depression (Tr. 150; *cf.* Tr. 115-39).  Barron complained of feeling nervous, shaky, constipated, and confused; Plaintiff indicated that he had had no problems sleeping.  The doctor noted that Barron's perceptions and thoughts were within normal limits and that his memory was unimpaired; Joshi noted that his patient was taking wellbutrin and amitriptyline.[2]

On November 6, Plaintiff told Dr. Joshi that he was doing ok though he complained of day sleepiness and night insomnia; the doctor continued the wellbutrin but changed the amitriptyline prescription to Trazodone[3] (Tr. 149).  On March 27, 2003, Barron stated that he had been depressed and, one month earlier, had stopped shaving and caring for himself; he had also had difficulties relaxing prior to sleep (Tr. 140).  Dr. Joshi continued the same medications.  On August 13, Plaintiff complained of deepening depression and sleep problems, stating his opinion that his medication were not working; Brannon also stated that he had cut himself, superficially, on the left hand (Tr. 173).  The doctor continued the medication regimen.

---

[2]*Wellbutrin* is used for treatment of depression. *Physician's Desk Reference* 1120-21 (52nd ed. 1998). *Amitriptyline*, marketed as *Elavil*, is used to treat the symptoms of depression. *Physician's Desk Reference* 3163 (52nd ed. 1998).

[3]*Trazodone* is used for the treatment of depression. *Physician's Desk Reference* 518 (52nd ed. 1998).

On December 18, 2003, Dr. Joshi completed a mental impairment questionnaire in which he indicated that he had been treating Brannon since 2002 through Mobile Mental Health for major depression, alcohol and cannabis dependence, both in remission, and a personality disorder (Tr. 167-70).  The doctor indicated that Plaintiff suffered from the following signs and symptoms:  poor memory, sleep disturbance, mood disturbance, emotional lability, social withdrawal or isolation, inappropriate affect, illogical thinking or loosening of associations, substance dependence by history, psychomotor agitation or retardation, paranoia or inappropriate suspiciousness, difficulty thinking or concentrating, suicidal ideation or attempts by history, somatization unexplained by organic disturbance, and hostility and irritability.[4]  Dr. Joshi stated that Barron was not a malingerer and that his impairments were "reasonably consistent with the symptoms and functional limitations described" in the evaluation; the doctor indicated that Plaintiff's condition could be expected to last at least twelve months, that it would cause him to be absent from work more than three times a month, and that his prognosis was poor.  Additionally, Dr. Joshi found that Plaintiff had no restrictions

---

[4]Plaintiff and the ALJ read Dr. Joshi's report to state that a ✓ means that Barron has that symptom while an *x* meant that he did not (*see* Tr. 167-68; *cf*. Tr. 19, Doc. 12, pp. 7-8).  The Court finds nothing on the form itself to indicate the meaning of Dr. Joshi's marks (and further notes that the explanation fails to account for the spaces not marked at all), but accepts this explanation for purposes of this report.

of daily living, slight difficulties in maintaining social functioning, and often had deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner; finally, the doctor stated that he did not think that Barron could manage benefits in his own best interest.

On March 12, 2004, Plaintiff underwent a consultative psychiatric evaluation by Dr. Charles E. Smith (Tr. 179-84). Smith noted Barron to be alert, cooperative, articulate with normal and relevant speech; there was no evidence of a thinking disorder or indication of organicity.  Plaintiff was euthymic and had an appropriate affect; he performed well on the cognitive examination, demonstrating, probable low normal intelligence. Barron was well-oriented and his memory intact; Smith thought he was capable of handling his own finances.  His formal diagnosis mirrored that of Dr. Joshi and Mobile Mental Health.  Dr. Smith also completed a medical source opinion form in which he indicated that Plaintiff would have mild restrictions in responding appropriately to co-workers, supervisors, and customers or other members of the general public; the doctor also thought Plaintiff's judgment was mildly restricted with regard to simple and complex work-related decisions and in dealing with changes in a routine work setting.  The Psychiatrist also indicated mild restrictions in his ability to understand, remember, and carry out detailed or complex instructions and in maintaining attention, concentration, or pace for periods of two

6

or more hours; Smith indicated that Plaintiff was moderately restricted in maintaining social functioning and activities of daily living.

The ALJ summarized these medical notes in his decision (Tr. 18-20), but declined to assign determinative weight to Dr. Joshi because he provided no narrative or explanation in setting out his opinion regarding Plaintiff's limitations (Tr. 23-24).  The ALJ also discounted Joshi's opinion as being inconsistent with his own treatment notes as well as the other medical evidence of record (Tr. 24).  Barron objects to the ALJ's finding because Drs. Joshi and Smith reached the same set of diagnoses, though they "disagree[d] as to the limiting effects of the diagnosis" (Doc. 12, p. 9).

The Court has reviewed the entire medical record, and summarized most of it herein, and finds that Plaintiff's claim that the ALJ improperly discounted Dr. Joshi's opinions is well-founded.  However, the Court further finds that it made no real difference here.

Specifically, Dr. Smith finds Barron more restricted than Joshi did in some respects.  Specifically, while Smith thought that Plaintiff was moderately restricted in his ability to maintain social functioning and in maintaining activities of daily living, Joshi found only slight social functioning limitations and no restriction of daily activities at all (*cf.* Tr. 183, 169).  Joshi did find Barron often suffered deficiencies

of concentration, persistence or pace while Smith found only a mild limitation (*id.*).  Even when taking the more restrictive of the limitations by either of the two doctors and adding them together, their sum does not indicate that Plaintiff cannot perform his past relevant work.  And Barron does not specifically challenge the ALJ's finding that he can return to his past relevant work.

Joshi also stated that Plaintiff would have difficult working on a sustained basis and would be absent from work more than three days a month (Tr. 169).  The Court finds no support for these conclusions in either Joshi's notes or anywhere else in the record and finds the ALJ's rejection of them to be supported by substantial evidence.

In summary, the Court finds that the ALJ improperly discounted some of Dr. Joshi's conclusions, but finds that the error was harmless.  While the Court does not understand why the ALJ rejected certain of Dr. Joshi's conclusions, it is of no moment on this record.

Barron next claim that the ALJ improperly discredited his testimony.  Plaintiff more specifically objects to the discounting of his testimony on the basis of his daily activities (Doc. 12, pp. 13-18).

The ALJ found that Barron's allegations of limitation were not wholly credible (Tr. 21-22).  In reaching this conclusion, the ALJ specifically stated that Plaintiff's self-described

8

activities of daily living were inconsistent with his claim of an inability to work.  The ALJ specifically noted Dr. Smith's report in which Barron stated that he "regularly goes to spend time with his girlfriend" (Tr. 21-22; *cf.* Tr. 180).  Plaintiff also kept his apartment clean, did some cooking, goes grocery shopping, watched television, and listened to the radio (*see* Tr. 180).  While these activities do not demonstrate a capability for performing routine, heavy work, they do not demonstrate a person incapable of any work.  To that extent, the ALJ's findings are supported by substantial evidence.

Barron also claims that the ALJ did not consider the side-effects of his medication (Doc. 12, pp. 19-21).  Plaintiff testified that his medications caused side effects in that they made him drowsy and caused him to have no energy (Tr. 195).  In a form completed for the Social Security Administration, Barron stated that the medicine caused him to be drowsy (Tr. 90).

The ALJ specifically stated that there was "no credible evidence in the record that medication side effects can be expected to limit the claimant's effectiveness in the performance of work duties or everyday tasks or that those side effects can be expected to be severe and to limit the claimant's overall effectiveness" (Tr. 23).  The Court notes that Plaintiff has pointed to nothing in the record indicating that he had ever complained to his treating physicians regarding the side effects of his medications.  In fact, specific notes from Dr. Joshi

9

indicate that Plaintiff had said there were no side effects (Tr. 149); the only other reference indicates Plaintiff's concern that the medications were not working (Tr. 173).  Barron's claim that the ALJ improperly discounted the side effects of his medications is without merit.

Plaintiff's final claim is that the ALJ engaged in "sit and squirm" jurisprudence.  Barron more specifically objects to the ALJ's commenting on his ability to answer questions and remember facts at the hearing (Doc. 12, pp. 21-22).  "'[S]it and squirm' jurisprudence [occurs when] an ALJ who is not a medical expert will subjectively arrive at an index of traits which he expects the claimant to manifest at the hearing.  If the claimant falls short of the index, the claim is denied."  *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982).

The statement to which Plaintiff objects is as follows: "The claimant's mental impairments did not have an adverse effect on his ability to answer questions and remember facts at his hearing, and did not significantly hinder his capacity to interact with Drs. Smith and Joshi, or his treating counselors" (Tr. 22).  The Court does not find that this statement rises to the level of "sit and squirm" jurisprudence.  The ALJ merely summarized what the hearing transcript aptly shows (*see* Tr. 188-97).  This claim is of no merit.

Plaintiff has raised four different claims in bringing this action.  All are without merit.  Upon consideration of the entire

record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401. Therefore, it is recommended that the Secretary's decision be affirmed, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), that this action be dismissed, and that judgment be entered in favor of Defendant Jo Anne B. Barnhart and against Plaintiff Clarence R. Barron, Jr. on all claims.

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1. **Objection**. Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. See 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(en banc). The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made. It is

>insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this 25th day of July, 2006.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE